Sullivan
No. 93-167

THE STATE OF NEW HAMPSHIRE

v.

ARTHUR "JAY" MACARTHUR

June 27, 1994

*Jeffrey R. Howard*, attorney general (*Mark S. Zuckerman*, assistant attorney general, on the brief and orally), for the State.

*Paul G. Schweizer*, of Keene, by brief and orally, for the defendant.

HORTON, J.   The defendant, Arthur "Jay" MacArthur, appeals his conviction for class A kidnapping, RSA 633:1 (1986), and first degree assault, RSA 631:1 (1986 & Supp. 1993), after a jury trial in Superior Court (*Morrill,* J.). He argues that the trial court should have instructed the jury that prior inconsistent statements made by the victim could not be used substantively, and that there was insufficient evidence of serious bodily injury to the victim. We reverse and remand.

On July 5, 1992, the defendant's girlfriend (victim) was admitted to the New London Hospital emergency room with dried blood on her hands and face, several facial lacerations, a hemorrhage in her right eye, a swollen and bruised face, and various bruises on other parts of her body. Nurses Pam Laurie and Wendy Whethers encountered the victim shortly after her admission, and Laurie described her as "hysterical" — "crying, shaking, talking fast. Breathing fast, very upset." The victim told the nurses that she had been dropped off at the hospital by the defendant who had beaten her with his fists and a flashlight, cut her with a knife, tried to strangle her, and held her without medical attention for two days. The same day, the victim gave a similar account to, among others, her brother; Dr. Timothy Wolfe, a physician at New London Hospital; and Dr. Michele Sasmore, a plastic surgeon to whom the victim was referred. On July 8, the victim completed, under oath, a domestic violence petition in Concord District Court, in which she stated: "I was beaten and sustained 36 stitches/staples on face and held on July 3rd . . . without medical treatment until July 5th." On July 13, State Trooper J. Michael Johnson conducted a videotaped interview of the victim in which she detailed, among other things, that the defendant had been angry because he mistakenly thought he saw the victim kissing his best friend, Gordie Welch.

The victim subsequently met with the prosecutor and told him that although the statements she had made on videotape were true, she wanted the charges dropped and that she would be "a less than willing witness" at trial. Anticipating that the victim would recant at trial, the State made a pretrial motion to have the videotape admit-

ted under the "catch-all" exception to the hearsay rule. *See* N.H. R. Ev. 803(24). The trial judge refused to admit the videotape under the catch-all exception, but ruled that if the victim did testify contrary to her earlier accounts, the State could use the videotape and any other inconsistent statements both to impeach her and substantively. At trial, the victim recanted her previous statements to the police and testified that she was injured when she fell against a sink and a barbecue grill. The videotape was admitted without limiting instructions.

On appeal, the defendant argues that the trial court erred in failing to instruct the jury that the victim's prior inconsistent statements could not be used substantively, and that because the only eyewitness evidence of the assault and kidnapping came from those statements, his conviction should be reversed. The State admits that the trial court erred in allowing some inconsistent statements, including the videotape, to be used substantively, but argues that such error was harmless. The State argues that because many inconsistent statements, although not so admitted, could have been admitted substantively under established hearsay exceptions, the improperly admitted evidence was only cumulative. In particular, the State insists that the statements to the nurses were admissible as either excited utterances, N.H. R. Ev. 803(3), or as statements for the purpose of medical treatment or diagnosis, N.H. R. Ev. 803(4), the statements to the doctors were admissible as statements for the purpose of medical treatment or diagnosis, and the domestic violence petition was admissible as a statement made under oath in a former proceeding, N.H. R. Ev. 801(d)(1)(a). We need not decide whether the State can raise on appeal alternative grounds for admission that were either not presented to or not considered by the trial court, *compare State v. McLaughlin*, 135 N.H. 669, 672, 610 A.2d 809, 810–11 (1992) *and State v. Santana*, 133 N.H. 798, 807–09, 586 A.2d 77, 83–84 (1991) *with State v. Coppola*, 130 N.H. 148, 153, 536 A.2d 1236, 1239–40 (1987) *and State v. Goulet*, 129 N.H. 348, 351, 529 A.2d 879, 881 (1987), because even assuming all this evidence was properly admitted, we are unable to conclude that admission of the videotape was harmless.

■■ Where the trial court has erroneously admitted evidence, we must reverse unless the State can show beyond a reasonable doubt that such error did not affect the verdict. *State v. Favreau*, 134 N.H. 336, 342, 592 A.2d 1136, 1140 (1991). We have, however, found trial errors to be harmless in some cases where improperly admitted evidence was cumulative. *See, e.g., State v. Roberts*, 131 N.H. 512,

518, 556 A.2d 302, 306 (1989); *State v. Glidden*, 123 N.H. 126, 133, 459 A.2d 1136, 1140 (1983); *State v. Kenna*, 117 N.H. 305, 309, 374 A.2d 427, 430 (1977). Although the State is correct that the videotape was in some sense cumulative in that it covered much of the same general subject matter as other evidence, it is unrivaled with respect to details of the crimes, and as such, cannot be considered truly cumulative. Collectively, the testimony that the State argues was properly admitted constitutes, at best, a partial summary of events. The videotape, however, not only adds detail to episodes cryptically referred to in that testimony, but also recounts other crucial episodes to which that testimony is silent. For example, on the videotape the victim recounted that the defendant threatened that he was going to kill her and gut her body like a deer, and later that he considered killing her and Welch and depositing their naked bodies in a common grave. The victim said that at one point her pain was so great that she begged the defendant to kill her, to which the defendant replied that he planned to torture her for many days before killing her. The victim also recounted the defendant telling her daughter to pack for a trip, but telling the daughter not to pack any of the victim's things because she wouldn't need them where she was going. Accordingly, the State has failed to convince us beyond a reasonable doubt that substantive use of the videotape did not affect the verdict.

■  The defendant next argues that there was insufficient evidence for the jury to find that the victim had suffered "serious bodily injury"—an element of both class A kidnapping and first degree assault—because none of her injuries were permanent and because, the defendant has represented, neither the victim nor either of the physicians was willing to say that her injuries rose to the level of serious bodily injury. First, RSA 625:11, VI (1986) makes clear that the "serious bodily injury" element does not require permanent injury inasmuch as it defines that term in the disjunctive: "any harm to the body which causes severe, permanent *or* protracted loss of or impairment to the health or of the function of any part of the body." (Emphasis added.) Second, in order to establish that element, the State need not have the victim or a medical expert parrot the words of the statute. Having reviewed the unsettling photographs of the victim taken at the hospital and considering her testimony that thirty-six stitches were required to close her wounds, we are dismayed by the defendant's contention that the victim did not suffer serious bodily injury. Finally, our review of the record reveals that, contrary to the defendant's representation to this court, both the

victim and Dr. Wolfe termed her injuries "serious." In sum, we hold that the State presented sufficient evidence to support a finding of serious bodily injury.

*Reversed and remanded.*

All concurred.